Mr. Borgum is here for the appellate, Mr. Rettu is here for the athlete, and when you are ready, Mr. Borgum, you may begin. Mr. Borgum is here for the athlete, and when you are ready, Mr. Guitars, you may begin. Mr. Guitars is here for the Let's say we buy your theory of accrual, that this is an ownership case and it accrues when Mr. Webster is, whether put on notice, should have known, whether it's repudiation. Here we have a situation where a third party has provided this notice. Can you walk me through why it's not necessary for the estate to have asserted its ownership right? Absolutely, Your Honor. So, first off, in this circuit, the circuit hasn't spoken to it, but district courts have, and Judge Birch and Calhoun said the standard is the statute of limitation runs when a plaintiff learns or should, as a reasonable person, have learned that the defendant was violating his or her rights. Now, counsel said that Mr. Webster could not have sued the estate back in 2005 when these guitars were being made. Well, that's not so, and we know it's not so because they sued the estate in this case, and the estate is doing the same thing today that it was doing back in 2007. So why could they sue the estate now but not back then? And the answer is they could have sued the estate because the estate was licensing its rights to Armadillo. Also, in answer to your question, we have several things that were going on where the estate was implicated. First of all, Mr. Rubenson, who has passed, and we can never get any evidence from him because of the delay here. He's no longer here. Had the case been brought timely within the statute of limitations, he would be alive, we would be able to get testimony from him, but we have that evidentiary prejudice. But he did say to Mr. Webster that the estate owns the copyright. Now, counsel suggested that that wasn't clear enough and it didn't reference the copyright, but it in fact did. The email in 2007 said that the consensus is that the estate owns the graphic. It was specific to the graphic. So Mr. Rubenson specifically said the estate owns the graphic. There's testimony that Mr. Webster understood that the people in the know who told that to Mr. Rubenson were the estate. So his understanding was that the estate, and there's no dispute on this, Mr. Webster admitted that he believed the estate told Mr. Rubenson that information. Additionally, we have some other things, and this is one of those cases where actions speak as loud as words do. In addition to the express repudiation that Mr. Rubenson had sent in writing, we also have the fundamental fact that Mr. Webster knew that these guitars were being made in 2005. He learned about it in 2004. Then he knew that the guitars were being made in 2005. That's when he could have sued. He could have sued the estate. He could have sued Armadillo, but he waited. He waited over a decade to file the lawsuit, but he had a claim right there and then. And again, we know that because they were doing the same thing then that they're doing now that they were sued for. He also brought a conspiracy claim in this case, which I think is very telling because he said there was a conspiracy among the estate and among Armadillo to deprive him of his copyrights. Well, if there was a conspiracy back then, how could he now say that they were not operating in unison? Also, on the actions front, in addition to the email, in addition to Mr. Webster knowing that these guitars were being sold in 2005, we have two more very potent facts. I'm sorry, three more potent facts. After the email, the testimony is that Mr. Webster testified that he contacted Mr. Rubinson numerous times to complain about the ownership issue. And each time Mr. Rubinson said, take it up with the estate, sue the estate. So we have admitted numerous conversations where Mr. Rubinson not only in writing, but also verbally rebuked the claim and repudiated the copyright claim as well. Then we have two more facts on top of it. As if that wasn't enough, we now have the fact that Mr. Webster wanted royalties for this graphic. Armadillo didn't pay those royalties. They paid the estate. And the testimony shows Mr. Webster testified three times that he assumed that the estate was getting paid royalties from Armadillo. So three times he assumed and presumed that that was the case. And he never got paid. Now, in the Kwan case, the Second Circuit said that there could be any number of events that can trigger the statute of limitations on an ownership claim, any number of things. And the case law shows that there are different things. In Calhoun, it was simply that the plaintiff should have known that the song he says is infringement was popular, should have known that. That was enough for Judge Birch to say that triggered the statute of limitations. Other cases, there's been a letter. Some other cases, like the Silva case that we cited out of the Central District of California, the refusal to pay royalties was enough. Well, no matter how you slice it, we have here five different things. And I have seen no case where there were five different independent forms of repudiation. And, again, those five things are the sale of the guitars openly that Mr. Webster knew about, the 2007 email that unequivocally said he does not own the graphic in the guitar, the subsequent conversations where Mr. Rubinson said, sue the estate, you don't own the copyright, the refusal to pay Mr. Webster royalties, and the payment of royalties to the estate. Now, in that email, there was a mention of working on a relic. And Mr. Webster says that there was mention of working on a relic, and a suggestion that there could be a royalty for the work on that relic. Well, it turns out the record shows that Mr. Webster did have a deal with Armadillo, and they did make a guitar together. They actually worked together before this lawsuit was filed and made a special guitar for Mr. Webster. There can be no doubt that Mr. Rubinson did not intend to pay a royalty for the Dean from Hell graphic because he never did. He never paid that money. He kept saying no. And part of this was an olive branch. He said he wanted to – in his email, he said, I'm all about making friends and not making enemies. But that is not enough to undo the repudiation. The repudiation was quite clear, and it was unequivocal. Didn't he – I thought the reason he didn't sue the Abbott estate was because he did not want to make his fan base mad. Pardon, Your Honor? He didn't file a suit against the estate because he didn't want to make the artist's fan base mad. Yes. Isn't that the reason that he didn't sue the estate? That's one of the reasons, Your Honor. But Pantera was a beloved band back then and is a beloved band back now. Counsel noted that their downloads are at a record high. So he sued now. Why couldn't he sue then? I mean, and in fact, the fervor for this band remains today. So that excuse is not enough to excuse, as the district court found, the failure to sue within the statute of limitations. I'll also note that there's one case we cited, the Sanchez case, where there's somewhat similar in the sense as actually more of an olive branch was given in that case. But in Sanchez, the defendant repudiated ownership of the plaintiff's copyright, said you don't own this. But he still paid royalty to the plaintiff, paid him a royalty. And he said he sent that royalty in the spirit of goodwill, time efficiency, and in an effort to do the right thing. And the court held in that case, and this is Southern District of Texas, that the payment does not indicate that the ownership dispute has been resolved. Because in that same communication, there was a repudiation of ownership like we have here. Although here, in this case, it's not as strong for the plaintiff because no royalties were paid. And it was very clear that the copyright was being repudiated. Another point that counsel made that I'd like to address, Your Honors, is that Mr. Webster owns the copyright. And he did obtain a copyright for this guitar. Now, he filed it in 2016 for a work that was created in 1986. That was the year, that's 30 years after the work was created, the year that Michael Jordan was the rookie of the year. Koch introduced the new Koch, and Microsoft introduced Windows 1.0. He then, even though the work was created back then, he didn't file the copyright until 2016. Now, in that copyright application, he initially said the publication date was 86. The Copyright Office said, well, in that case, you don't have a valid copyright because you don't have notice on it because it's a pre-'89 work. So then he changed his date, his publication date, to 2004. Then he changed it again to 2005. The current date on that copyright registration is 2005 for publication. If a copyright doesn't issue within five years of the publication, there is no presumption of validity or ownership. So there are no presumptions on this copyright. Even were there any presumptions, we have evidence in this case that's uncontested that Mr. Webster did not paint this design. And I know the district court didn't rule on it, but the fact remains that repudiation was done in good faith and has solid grounds today. Because at the end of the day, we've learned through this case, even though through the passage of time it was difficult to get, somebody else painted this. Mr. Webster commissioned somebody else to paint this design. In theory, though, we don't know the facts, that would still mean Mr. Webster might have some claims to authorship if he told the artist what to do and how to draw it, right? Not under Eleventh Circuit law, Your Honor. The MGB Holmes case and the Safeway case counseled that the idea is not protectable. And, in fact, in those cases, somebody gave a sketch drawing. In the Safeway case, the artist gave a sketch drawing to the artist and said, draw this cornucopia in our stores. And even though they gave them a sketch and told them exactly what to do and told them which items to put on the mural, that wasn't enough for ownership because that's just merely an idea. It's the person who puts pen to paper or, in this case, paint to guitar and actually creates it. And the artist is actually settled at this point, correct? Pardon me? The artist of this design is settled at this point. He's out of litigation. That's right. That's Hatchett, is that his name? Correct, Your Honor. And he has assigned the copyright to the estate. So they are the rightful owner of the estate. Again, going to the fundamental point, this case is about ownership. It's all a dispute about ownership. And when it's ownership, we know from virtually every circuit that's ruled on it, and now there have been many, that you must file within three years of the time that the claim accrues. And the claim accrues in the 11th Circuit when you knew or should have known about the infringement. In that case, it was January 2005 when these guitars were being made and when Mr. Webster absolutely could have sued the estate because, again, he just did so in this case. So why couldn't he do so back then? And that's when the claim accrues. And fundamentally, as Judge Birch explained in Calhoun, there's a fundamental reason for this rule. There's evidentiary prejudice and there's unfairness to wading in the weeds and pouncing on a copyright years later. And we have just that in this case with all the fundamental witnesses, particularly Mr. Rubinson, having passed away. Thank you, Mr. Bidrew. Thank you. Mr. Borgum, you've reserved some time for rebuttal. Yes, Your Honor. Thank you. Your Honor, after all of that, I think it's clear that what I said in the very beginning is true, that there are issues of fact in this case. For instance, Mr. Rattou said that the sale of the guitars in 2005 was repudiation. We know that's not true. It was infringement. There was no repudiation in 2005. At earliest, it was 2007. Then there was discussion of subsequent communications, subsequent conversations. While it should have been discussed by opposing counsel, when those were, it's very important when the three years starts in this case. It shows you how easy it is in this case to mix infringement with ownership. There was no repudiation in 2005. There was no reason for Mr. Webster to sue under Petrala in 2005. When were the subsequent conversations? It was in the record that at the funeral of Mr. Abbott, Dean Zielinski, the former owner of Dean Guitars, had said to Mr. Webster in the past, sometimes you ask for permission, sometimes you ask for a forgiveness. Everyone in intellectual property law knows what that means. That does not mean you're asserting ownership. Mr. Webster clearly, there's clearly issues of fact here, whether he knew or should have known that there was an ownership claim by the estate. And if the estate had an ownership claim, it clearly should have brought an affirmative counterclaim in this case for deck relief. Mr. Webster did not want to sue his friend's estate. If you read the bios of Mr. Abbott, Mr. Webster was his mentee. It was something he did very, very reluctantly after this case was filed. I feel some sympathy, and I suspect that was a true motivation, perhaps not the only one. So I feel for him on that. But it still doesn't get around the fact that if he's unnoticed that somebody else is claiming ownership, whether perhaps he was too kind for his own sake back then, but it still means he had notice. Well, that brings us to the question, Your Honor, then. Because Section 106 allows, says that the right to create derivative works is one of the rights held by Mr. Webster as the copyright owner, a new derivative works created in 2015 with the new limited edition. It's difficult to say that that's the exact same guitar that was produced in 2005 because it's not. It was sold as a new guitar. It's a new derivative work. That creates a new right under Section 106. And at the very least, Mr. Webster should be allowed a trial on whether he's entitled to damages and injunctive relief to stop Dean Guitars from continuing to make derivative works. They do not have a license to make derivative works forever. This is not the case for this circuit to say that, to set a standard that someone can point to a third party who can continue to make derivative works despite something that happened years before. A couple of other things I wanted to point out, Mr., that opposing counsel said, there's a big difference about when Mr. Webster should have sued. Mr. Abbott was murdered. Mr. Webster had received e-mails with pictures of leather jackets with bullet holes in them. People close to Mr. Abbott were other designers. There was a lot of strange things going on. No one wanted to come out against the estate of Darrell Abbott in Dallas, even the last year after the summary judgment was granted because of posts on social media implying that Dean Guitars owned the copyright. Mr. Webster was at a concert where he goes frequently. He was yelled at by people. They got around him and started yelling at him, F.U. Buddy Webster, you went after Dime, blah, blah, blah. This is not something that he took lightly. So that's why he didn't sue. Even today he gets yelled at. Back then, who knows? Let's see. I wanted to point out the issue that the court brought up about the legacy, and this was the same legacy issue that was brought up in Petrella, where the Supreme Court said it's hardly incumbent on copyright owners to challenge each and every actionable infringement. Sometimes the value of the copyrighted work will go up. Sometimes the infringement has no effect on the original work, and sometimes it even complements it with fan sites. Even if an infringement is harmful, it may be too small to justify the cost of litigation. And the court continued, sue now or forever hold your peace, would put copyright owners in a very bad position, which is what's implied here. Mr. Rubenson's quote again, I have taken some time and spoken with several people in the know, and the consensus concerning Dime's graphic is that Dime's estate is the legal owner of it. With that said, I would like to work with you on a Dime project because I'm about making, not making enemies, but making friends. Rita and I have plans to do a Dean from Hell relic and would like you involved for a royalty. Is that of interest? How is that an express repudiation? The people in the know, this is about as equivocal as you can get. Who are the people in the know? Why are they offering a relic? These are issues of fact for trial, and that's clearly been established by everything that was said here today, that this is the case. The court can adopt this new standard, but it should send this case to trial to know, so that Buddy Webster can have a hearing on what he knew and when and whether it was reasonable for him to wait. Thank you, Your Honor. Thank you, counsel.